UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
CHIDOZIE WILSON OKEKE,

                Petitioner,

        - against -

RAUL MALDONADO, JR., *in his official*
*capacity as Warden of the Metropolitan*
*Detention Center Brooklyn*, et al.,

                Respondents.

--------------------------------------------------------x

**MEMORANDUM & ORDER**
26-CV-2714 (PKC)

PAMELA K. CHEN, United States District Judge:

On May 6, 2026, Petitioner Chidozie Wilson Okeke filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 ("Section 2241"). (Pet., Dkt. 1.) On June 23, 2026, Petitioner filed an Amended Petition. (Am. Pet., Dkt. 11.) He asserts five separate claims, chief among them that his arrest and detention are unlawful as Respondents failed to rely on a valid warrant necessary to arrest and detain him pursuant to 8 U.S.C. § 1226(a) ("Section 1226(a)"), and in doing so violated Section 1226(a) and his Fifth Amendment procedural due process rights. For the following reasons, the Amended Petition is GRANTED, and Respondents are ordered to release Petitioner from custody immediately and no later than 5:00 p.m. ET on Friday, July 17, 2026.

**BACKGROUND**

**I.    Factual Background**

Although Petitioner identifies numerous inaccuracies in Respondents' factual claims, (*see, e.g.*, Am. Pet., Dkt. 11, ¶¶ 27–31; Pet.'s Reply Supp. Am. Pet. ("Pet.'s Reply"), Dkt. 17, at 5–7), the Court need not resolve them, because, even accepting as true Respondents' recitation of the events, Petitioner is entitled to a writ of habeas corpus and immediate release. The Court therefore recites and relies on the facts as presented by Respondents.

Petitioner Chidozie Wilson Okeke is a resident of New York who has been living in the state since 2023. He is married to a United States citizen but does not have lawful immigration status. (*See* Am. Pet., Dkt. 11, ¶ 19; Decl. Officer Brenden Cuni ("Cuni Decl."), Dkt. 14-1, ¶¶ 3–6.)

On May 2, 2026, officers from Immigration and Customs Enforcement ("ICE") and United States Customs and Border Protection ("CBP") were conducting "surveillance operations" in Brooklyn, New York, with the goal of "locating and arresting" an individual other than Petitioner. (Cuni Decl., Dkt. 14-1, ¶¶ 7–8.) During this operation, they observed someone near a vehicle whom they suspected was their target. (*Id.* ¶ 9.) The officers proceeded to run a search on the vehicle's license plate and discovered that the vehicle was registered to Petitioner. (*Id.* ¶ 10.) They then ran database searches that suggested that Petitioner did not have documentation to be lawfully present in the United States. (*Id.* ¶ 11.) Later that day, at 7:15 p.m., an ICE officer, Brenden Cuni, while still in the field participating in the surveillance operation, issued a Form I-200 Warrant for Arrest of Alien ("Form I-200 Warrant") for Petitioner. (*Id.* ¶ 12.) A few minutes later, officers began to follow Petitioner's vehicle and conducted a vehicle stop shortly thereafter in the Bushwick neighborhood of Brooklyn, New York. (*Id.* ¶ 13.) During the stop, Petitioner, while still in the vehicle, identified himself and confirmed that he did not have documents permitting his lawful presence in the United States. (*Id.* ¶¶ 15, 17.) When the officers demanded that he exit the vehicle, an altercation ensued in which Petitioner attempted to drive the vehicle, the officers broke through the windows, the officers pointed a taser at Petitioner, and punches were exchanged. (*Id.* ¶¶ 18–22.) Minutes into the altercation, the officers dragged Petitioner out of his vehicle and placed him under arrest. (*Id.* ¶¶ 23–24.) Once arrested, Petitioner indicated that he needed medical attention, so he was taken to Wyckoff Heights Medical Center ("WHMC"). (*Id.* ¶¶ 25–26.)

At 2:10 a.m. on May 3, 2026, approximately seven hours after he was arrested, Petitioner was discharged from WHMC with medical clearance. (*Id.* ¶ 27.) He was then transported to 26 Federal Plaza in Manhattan for processing and a custody determination. (*Id.*) Four hours later, at approximately 6:00 a.m., Respondents issued a Form I-862 Notice to Appear ("NTA") and charged Petitioner with remaining in the United States longer than permitted, in violation of the Immigration and Nationality Act § 237(a)(1)(B). (*Id.* ¶ 29.) Around the same time, at 5:58 a.m., Respondents served Petitioner with a Form I-286 Notice of Custody Determination. (*Id.* ¶ 30.) Later that day, at 2:00 p.m., Respondents filed the NTA with the immigration court. (*Id.* ¶ 31.)

On May 4, 2026, at 11:30 p.m., more than 48 hours after his arrest, Respondents transported Petitioner to the Metropolitan Detention Center Brooklyn, where he is presently detained. (*Id.* ¶ 32.)

## II.     Procedural Background

Petitioner filed a petition for a writ of habeas corpus on May 6, 2026. (Pet., Dkt. 1.) That same day, the Court ordered Respondents to show cause by May 11, 2026 why the writ should not be issued. (O.S.C., Dkt. 3.) On May 8, 2026, Respondents filed a short letter jointly requesting an adjournment of the deadline for Respondents to respond to the Court's Order and offering to provide a joint status report by May 18, 2026. (Resp't's Letter, Dkt. 5.) On May 18, 2026, Respondents filed a letter "jointly request[ing] that all the Court [*sic*] continue to hold in abeyance all deadlines until after Petitioner has a bond hearing." (Resp't's Letter, Dkt. 6.) On June 2, 2026, Respondents filed another letter indicating that Petitioner had not yet requested a bond hearing and jointly seeking a further extension of time. (Resp't's Letter, Dkt. 7.) On June 17, 2026, Respondents provided another "joint status report" to the Court, explaining that Petitioner wanted to amend his Petition by June 23, 2026. (Resp't's Letter, Dkt. 8.) Respondents further stated that, in light of pending proceedings in front of an immigration judge, "this action *should be dismissed*

*without prejudice* pending the resolution of the case before the [immigration judge]." (*Id.* (emphasis added).) Respondents concluded with a garbled request:

> Respondents respectfully request, with Petitioner's consent, that, should Petitioner be permitted to amend the Petition by June 23, 2026[,] their response date be set for July 7, 2026. Because defense counsel is out of the office from July 10, 2026 to July 24, 2026, he respectfully requests that Court (without Petitioner's consent) that any response date be set for July 29, 2026 [*sic*].

(*Id.*) In response, Petitioner filed a letter informing the Court that, despite Respondents' representation that the June 17 letter was purportedly "on behalf of all parties," (*id.*), Respondents had never advised Petitioner that they would request dismissal of Petitioner's habeas action in the joint letter, (Pet.'s Letter, Dkt. 9, at 1). Petitioner also took issue with Respondents' request for more than a month to respond to the Amended Petition because "Petitioner should not be required to remain in detention pending the completion of Respondents' counsel's vacation travel itinerary." (*Id.* at 2.) Finding it inappropriate to prolong Petitioner's detention to accommodate counsel's personal travel schedule, the Court granted Petitioner leave to file an amended petition by June 23, 2026 and directed Respondents to file their opposition by July 7, 2026. (*See* 06/18/2026 Dkt. Order.)

On June 23, 2026, Petitioner filed his Amended Petition. (Am. Pet., Dkt. 11.) On July 6, 2026, Respondents, with Petitioner's consent, requested an extension of time until July 8, 2026 to file their opposition, (Resp't's Letter, Dkt. 13), which the Court granted, (07/06/2026 Dkt. Order). On July 8, 2026, Respondents filed their opposition, (Resp't's Opp'n Am. Pet. ("Resp't's Opp'n"), Dkt. 14), followed by Petitioner's reply on July 14, 2026, (Pet.'s Reply, Dkt. 17).

## LEGAL STANDARD

Petitioner filed his Amended Petition pursuant to Section 2241, which authorizes a district court to grant a writ of habeas corpus where a petitioner is "in custody in violation of the

Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Federal courts have jurisdiction to adjudicate habeas corpus petitions challenging immigration-related detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) (explaining that Section 2241 "authorize[s] any person to claim in federal court that he or she is being held 'in custody in violation of the Constitution or laws . . . of the United States'" (quoting 28 U.S.C. § 2241(c)(3))). A petitioner under Section 2241 "bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence." *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011) (citing *Parke v. Raley*, 506 U.S. 20, 31 (1992); *Walker v. Johnston*, 312 U.S. 275, 286 (1941)).

**DISCUSSION**

Petitioner makes five claims in support of his Amended Petition for a writ of habeas corpus. First, he claims that the Form I-200 Warrant was defective and without effect because it was issued before the NTA was issued, and therefore his arrest was functionally warrantless and his detention is not authorized by Section 1226(a). (Am. Pet., Dkt. 11, ¶¶ 73–77.) Second, Petitioner claims that his arrest and detention violated his Fifth Amendment procedural due process rights given the lack of valid warrant, prior notice, and individualized determination of flight risk. (*Id.* ¶¶ 78–85.) Third, Petitioner claims that his detention violated his Fifth Amendment substantive due process rights because it "bears no 'reasonable relation' to the government's interests in preventing flight and danger," and thus "his detention is devoid of any reasoned justification." (*Id.* ¶¶ 86–90 (quoting *Jackson v. Indiana*, 406 U.S. 715, 738 (1972).) Fourth, Petitioner claims that his arrest violated 8 U.S.C. § 1357 because Respondents did not have reason to believe he was a flight risk and thus could not arrest him under the statute without a warrant. (*Id.* ¶¶ 91–95.) Fifth, Petitioner claims that his functionally warrantless arrest and Respondents' lack of probable cause violated his Fourth Amendment right to be free of unreasonable searches and seizures. (*Id.* ¶¶ 96–101.)

For the sake of efficiency, the Court addresses the first and second claims together as they raise the same core issue: Respondents lacked a valid warrant when arresting Petitioner and thus their arrest and detention of Petitioner were unlawful. Since this failure is sufficient to justify granting the writ, the Court need not, and does not, address Petitioner's other three claims seeking the same relief.

## I. Respondents Arrested and Detained Petitioner Without a Valid Arrest Warrant, in Violation of 8 U.S.C. § 1226(a) and Petitioner's Fifth Amendment Rights

Respondents have detained Petitioner pursuant to Section 1226(a). (*See* Cuni Decl., Dkt. 14-1, ¶ 32; Resp't's Opp., Dkt. 14, at 3.) Section 1226(a) states that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). "[P]ending such decision, the Attorney General . . . may continue to detain the arrested alien [or] may release the alien on . . . bond of at least $1,500 . . . [or] conditional parole." *Id.* This is the authority Respondents rely on to justify their detention of Petitioner. But, as the statute makes plain, Section 1226(a) "authorizes detention only '[o]n a warrant issued' by the Attorney General leading to the alien's arrest." *Jennings v. Rodriguez*, 583 U.S. 281, 302 (2018) (alteration in original) (quoting 8 U.S.C. § 1226(a)).

The warrant Respondents rely on here to justify the Section 1226(a) arrest and detention is a Form I-200 Warrant, the procedures for which are governed by Department of Homeland Security ("DHS") regulations. Of relevance here, implementing regulation 8 C.F.R. § 1236.1(b)(1) limits the time in which a Form I-200 Warrant may be executed: "*At the time of issuance of the [NTA]*, or at any time thereafter and up to the time removal proceedings are completed, the [named individual] may be arrested and taken into custody under the authority of Form I–200, Warrant of Arrest." 8 C.F.R. § 1236.1(b)(1) (emphasis added). Thus, "[t]he NTA

6

begins the removal process, and at that time or after its issuance, the [g]overnment can then effectuate [an individual's] arrest, and, if necessary, detention, until removal proceedings are completed." *Gopie v. Lyons*, No. 25-CV-5229 (SJB), 2025 WL 3167130, at *1 (E.D.N.Y. Nov. 13, 2025) (citing *Niz-Chavez v. Garland*, 593 U.S. 155, 157–58 (2021) ("The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), 110 Stat. 3009–546, requires the government to serve 'a notice to appear' on individuals it wishes to remove from this country.")). In other words, a "[Form] I-200 [Warrant] cannot be used to effectuate an arrest *before* an NTA has been issued." *Yeleshev v. Larocco*, No. 26-CV-2294 (SJB), 2026 WL 1353806, at *2 (E.D.N.Y. May 14, 2026) (collecting cases). And if a Form I-200 Warrant is without effect, it cannot serve as the predicate "warrant issued by the Attorney General" necessary to justify arrest and detention under Section 1226(a).

There is no dispute here that Respondents failed to issue an NTA before arresting Petitioner pursuant to a Form I-200 Warrant. Respondents concede that they issued the Form I-200 Warrant at 7:15 p.m. on May 2, 2026, (Cuni Decl., Dkt. 14-1, ¶ 12), and that they issued and served Petitioner with the NTA almost eleven hours *later*, at approximately 6:00 a.m. on May 3, 2026, (*Id.* ¶ 29).[1] But "[t]here is no 'leeway'[;] [i]f ICE wants to use a warrant, it must have a valid NTA in place." *Parada Cruz v. Mullin*, --- F. Supp. 3d ----, No. 26-CV-1110 (SJB), 2026 WL 1027441, at *2 (E.D.N.Y. Apr. 16, 2026) (quoting *Gopie*, 2025 WL 3167130, at *1 n.3); *see also Garcia Lanza v. Noem*, 822 F. Supp. 3d 326, 333 (E.D.N.Y. 2026) (recognizing in different circumstances that "the authority to issue administrative arrest warrants," including a Form I-200 Warrant, "emanates from a pending removal proceeding—which is initiated by the issuance of an NTA").

---

[1] Respondents further concede they did not file the NTA with the immigration court until 2:00 p.m. on May 3, 2026, approximately eight hours after serving it on Petitioner. (Cuni Decl., Dkt. 14-1, ¶ 31.)

Here, Respondents did not have a valid NTA in place at the time of Petitioner's arrest on May 2, 2026. Accordingly, "when ICE arrested [Petitioner,] they had no authority to do so," which is a "dispositive and independent basis to grant the writ." *Gopie*, 2025 WL 3167130, at *1 (collecting cases); *see also Yeleshev*, 2026 WL 1353806, at *2 (concluding that, where an NTA was issued approximately 30–90 minutes after petitioner's arrest, "[a]lthough the time frame between the issuance of the arrest warrant and the issuance of the NTA here was relatively short, the law nonetheless does not permit what occurred").[2]

Furthermore, these same failures by Respondents violated Petitioner's Fifth Amendment procedural due process rights. The balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), applies to procedural due process claims and requires this Court to consider: (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of that interest through the procedures used; and (3) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail.

Here, Petitioner's affected private interest "is the most elemental of liberty interests—the interest in being free from physical detention by one's own government." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). Meanwhile, Respondents created a very high risk of an erroneous deprivation of Petitioner's liberty interests by failing to follow established and mandatory procedures, as discussed above. *See Mejia Huerta v. Noem*, No. 26-CV-1248 (MMG), 2026 WL 555014, at *3 (S.D.N.Y. Feb. 27, 2026) ("[T]he procedures employed by ICE officers in

---

[2] Though immaterial to the merits of the Amended Petition and Petitioner's individual circumstances, the Court notes that this unlawful conduct is not isolated to Petitioner or this District. Indeed, there is a city-wide class action lawsuit in Chicago involving the same conduct that has resulted in the issuance of an order finding it unlawful and ordering remedial measures. *See Castañon Nava v. Dep't of Homeland Sec.*, 806 F. Supp. 3d 823, 847–59 (N.D. Ill. 2025), *aff'd in part*, 175 F.4th 828 (7th Cir. 2026).

connection with Petitioner's arrest and detention created a high risk of the erroneous deprivation of his liberty interest. The record in this case demonstrates that Petitioner was arrested without a proper warrant."); *Pichardo Medina v. Hermosilla*, No. 25-CV-2233 (MC), 2025 WL 3712271, at \*4 (D. Or. Dec. 22, 2025) ("Respondents denied *themselves* the ability to reduce the risk of an erroneous deprivation of Petitioner's liberty. Respondents followed an inverted process that began by first arresting Petitioner without a warrant, only then issuing an NTA and preparing a warrant for his arrest, and ultimately detaining Petitioner based on the events of their premature arrest."); *Lopez v. Trump*, No. 25-CV-4826 (JAV), 2025 WL 3274224, at \*8 n.4 (S.D.N.Y. July 10, 2025) ("It also appears that Petitioner was taken into custody based upon an invalid warrant, another potential due process concern with Petitioner's arrest and detention.").

As to the government's interest in arresting and detaining Petitioner, the Court is left guessing, as Respondents fail to even discuss Petitioner's Fifth Amendment procedural due process claim in their response. But the government's interest seems minimal in any event: "[N]othing in the record suggests that any DHS or ICE officer made *any* individualized determination that [Petitioner] presented a danger or flight risk *before* ICE arrested and detained [him.]" *See Blandon v. Maldonado*, No. 26-CV-1669 (NJC), 2026 WL 790910, at \*4 (E.D.N.Y. Mar. 21, 2026) (emphasis added). Respondents do not even muster an argument now as to how Petitioner was a danger or a flight risk, let alone offer evidence of a pre-detention determination.[3]

---

[3] Respondents repeatedly allege that "[o]fficers" "conducted an individualized custody determination," (*see* Resp't's Opp'n, Dkt. 14, at 3), but fail to provide any details to substantiate that a determination occurred, such as what factors were considered, which "[o]fficers" were involved, and when exactly this determination was made. Furthermore, the Court has numerous concerns with the accuracy of Respondents' declaration as to the custody determination. (*Compare* Cuni Decl., Dkt. 14-1, ¶ 30 ("Officers conducted an individualized custody determination and decided to detain the Petitioner. A Form I-286, Notice of Custody Determination ('I-286') was served on Petitioner on May 3, 2026. The I-286 contains a digital signature indicating that the determination was signed at 5:58 AM.") *with* Dkt. 17-2 (INA § 236(a)

9

The scuffle that ensued after Respondents began their unlawful arrest is of no moment. Weighing all of the *Mathews v. Eldridge* factors, Respondents' detention of Petitioner with no notice or opportunity to be heard prior to the deprivation violates his Fifth Amendment rights to procedural due process. *See id.* (holding the same in similar circumstances); *Aparicio v. Genalo*, No. 26-CV-1411 (NJC), 2026 WL 698872, at *5 (E.D.N.Y. Mar. 12, 2026) (same); *Menjivar Giron v. Genalo*, No. 26-CV-1714 (NJC), 2026 WL 809965, at *5 (E.D.N.Y. Mar. 24, 2026) (same).

Respondents' only response addressing these issues is to say that "an I-200 was executed *prior* to the arrest of Petitioner." (Resp't's Opp'n, Dkt. 14, at 3.) But even if true, this neither addresses nor ameliorates the illegality of the Form I-200 Warrant being issued and executed without an NTA being issued first, as discussed *supra*.[4]

Respondents' other arguments address only separate downstream issues that are irrelevant and moot in light of the Court's finding that the arrest was unlawful. Respondents argue that they have complied with the custody determination procedures required by Section 1226(a) and thus are permitted to continue to detain him. (Resp't's Opp'n, Dkt. 14, at 4.) But since the Court has

---

Initial Custody Determination form produced by Respondents on June 30, 2026 to a third party monitor of law enforcement, (*see* Decl. Elizabeth Gyori, Dkt. 17-1, ¶ 6), that (1) contains a wet signature and a "5:45 AM" notation, not a "digital signature" at "5:58 AM" as Respondents declare; (2) has numerous "xxx" markings imperfectly obscuring key notes as to flight risk and danger which contain statements such as "[s]ubject arrested by NYPD twice on criminal charges" and "[s]ubject does not have a stable residence," which Respondents now do not mention in their response, suggesting these might have been incorrectly included; (3) is filled out in blue ink while the signature and accompanying time was signed in black ink; and (4) is littered with digitally added annotations dated "06/26/2026").) Not only do Respondents fail to provide sufficient substantiation for their claims of a custody determination, but the Court has reason to doubt even the limited facts Respondents do provide.

[4] To be sure, Respondents were on notice of this critical and dispositive issue: Petitioner's first claim for relief is that his arrest was warrantless and unlawful because "[t]he government's documents reflect that [Petitioner]'s [NTA] was issued after the I-200 and after his arrest." (Am. Pet., Dkt. 11, ¶ 75.) Nonetheless, Respondents appear to have intentionally ignored this central and dispositive issue.

found the arrest was unlawful to begin with, it could not have triggered Respondents' detention authority under Section 1226(a), and thus Respondents' authority to continue to detain Petitioner without a bond hearing is irrelevant. *See Meza v. Francis*, No. 26-CV-2722 (NCM), 2026 WL 1734903, at *3 (E.D.N.Y. June 16, 2026) ("[J]ust as 'a bond hearing before an immigration judge . . . assumes that a valid custody determination was made in the first instance,' it also assumes a valid arrest was made in the first instance." (quoting *Gopie*, 2025 WL 3167130, at *3)). Similarly, Respondents' arguments that Petitioner must first request a bond hearing and exhaust administrative remedies before seeking habeas relief before this Court, (*see* Resp't's Opp'n, Dkt. 14, at 4–6), are moot, *see Meza*, 2026 WL 1734903, at *3 ("Exhausting administrative remedies does nothing to cure a procedurally defective arrest."); *Gopie*, 2025 WL 3167130, at *3 ("[Petitioner] is not required to exhaust a process that was deficient from the outset."); *Inestroza Carbajal v. Frazier*, No. 26-CV-2778 (SJB), 2026 WL 1309265, at *5 (E.D.N.Y. May 12, 2026) ("Respondents' change in legal position, post-hoc rationalizations, and attempts to remedy do not vitiate an arrest and detention that was illegal from its inception."). Finally, Respondents also make an argument that "a writ of habeas corpus cannot be granted on the basis of a Fourth Amendment challenge." (Resp't's Opp'n, Dkt. 14, at 7.) Since the Court does not base its decision on a violation of the Fourth Amendment, this argument is also moot.

## II. Remedy

A writ of habeas corpus "is at its core a remedy for unlawful executive detention. The typical remedy for such detention is, of course, release." *Munaf v. Green*, 553 U.S. 674, 693 (2008) (citations omitted); *see also Yao v. Almodovar*, 813 F. Supp. 3d 461, 477 (S.D.N.Y. 2025) ("A bond hearing after the fact, by definition, would not and cannot cure [the] constitutional violation. Although [petitioner's] release today cannot cure his loss of liberty . . . , this remedy, relative to the procedural one of ordering a bond hearing, is the one that comes closest to doing

so." (collecting cases ordering same remedy)); *Y-C- v. Genalo*, No. 25-CV-6558 (NCM), 2025 WL 3653496, at *7 (E.D.N.Y. Dec. 17, 2025) (concluding that "no relief short of petitioner's immediate release would be appropriate or sufficient" in light of the constitutional violations suffered).

Accordingly, given Petitioner's unlawful arrest and subsequent detention, the Court finds it appropriate and necessary to order Petitioner's immediate release. *See Gopie*, 2025 WL 3167130, at *1–2, *4 (ordering release where the court found two independent bases for granting the writ, including a failure to issue an NTA before arresting petitioner pursuant to a Form I-200 warrant); *Yeleshev*, 2026 WL 1353806, at *8 (ordering release where "there [we]re two independent bases to grant the writ—the failure to initiate removal proceedings before or at the time of effectuating [petitioner's] arrest, and the use of an I-200 arrest warrant that was legally invalid"); *Izaquirre v. Blanche*, No. 26-CV-2911 (PKC), 2026 WL 2023200, at *14 (E.D.N.Y. July 13, 2026) (ordering release where "[r]espondents were not authorized to arrest [p]etitioner in the first place").

## CONCLUSION

For the foregoing reasons, Chidozie Wilson Okeke's Amended Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, (Am. Pet., Dkt. 11), is GRANTED.

Respondents are hereby ORDERED to release Chidozie Wilson Okeke immediately, and no later than July 17, 2026, at 5:00 p.m. ET. Respondents shall release Petitioner subject to the conditions at which he was at liberty before he was detained, without any additional constraints on his liberty, including, but not limited to, electronic or GPS monitoring. Respondents must release Petitioner with all of his belongings that are in Respondents' possession, including but not limited to identification cards, clothing, and money.

Respondents shall confirm compliance with these directives in a filing on the docket by 12:00 p.m. ET on July 20, 2026.

Respondents may not administratively recharacterize the release granted by this Order as grounds to impose conditions or re-impose existing conditions in conjunction with release (including release on recognizance or similar instruments) without prior notice to and authorization from the Court. Respondents may not re-detain Petitioner without notice and an opportunity to be heard at a pre-deprivation bond hearing before a neutral decisionmaker, at which Respondents will have the burden of showing that Petitioner's re-detention is authorized under Section 1226.

Should Petitioner seek an award of reasonable fees and costs pursuant to the Equal Access to Justice Act, he may do so by filing a letter application on the docket within 30 days of a final judgment in this action, which, if Respondents do not appeal, is October 14, 2026. 28 U.S.C. § 2412(d)(1)(B).

The Clerk of Court is respectfully directed to enter judgment consistent with this Order and close the case.

SO ORDERED.

/s/ Pamela K. Chen
Pamela K. Chen
United States District Judge

Dated: July 16, 2026
Brooklyn, New York

13